The STATE of Ohio, Appellee,

v.

TURNER, Appellant.

[Cite as *State v. Turner* (1993), 91 Ohio App.3d 153.]

Court of Appeals of Ohio,
Hamilton County.

No. C–920715.

Decided Oct. 13, 1993.

154

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *L. Susan Laker,* Assistant Prosecuting Attorney, for appellee.

*David J. Scacchetti,* for appellant.

Doan, Judge.

Appellant James Turner was charged with and convicted of receiving stolen property. The complaint charged that on January 13, 1992, he disposed of a Roth pump belonging to Ford Motor Company ("Ford"). Initially deemed a felony, the charge was reduced to a first-degree misdemeanor.

An employee of Ford received information on December 31, 1991, from an agent of the Ohio Department of Liquor Control that a pump belonging to Ford was located on appellant's father-in-law's property. The agent had received this information from appellant's brother-in-law. The Ford employee and two police officers went to the described location in January 1992 and found a Roth pump which had attached a serial number identical to a pump previously purchased by Ford. Ford did not realize the pump was missing, in part, because it kept records concerning such items for no more than six and one-half years. Ford did provide various documents and testimony at trial to demonstrate that the pump had been purchased and received in 1980.

In this appeal, appellant raises three assignments of error for our review. Appellant first contends that the trial court erred to his prejudice in denying his motion to dismiss the misdemeanor charge on statute-of-limitations grounds.[1] Appellant also assigns as error the trial court's denial of his Crim.R. 29 motion to dismiss the misdemeanor charge due to the asserted insufficiency of the evidence. In his third assignment of error, appellant argues that the trial court erred to his prejudice when it overruled his motion for a mistrial. We overrule all three assignments of error.

R.C. 2901.13 establishes various periods of limitation for the institution of criminal proceedings. Section (F) of the statute tolls the running of time "during any time when the corpus delicti remains undiscovered." In *State v. Black* (1978), 54 Ohio St.2d 304, 307, 8 O.O.3d 296, 297, 376 N.E.2d 948, 951, the Ohio Supreme Court explained that the *corpus delicti* includes both the act and the criminal agency of the act. We are aware that the court has also stated, in *State v. Hensley* (1991), 59 Ohio St.3d 136, 571 N.E.2d 711, that discovery of the *corpus delicti* of a crime does not necessarily depend upon when the *corpus delicti* is discovered by the prosecution or other legal authorities. The court implied in *Hensley* that, in cases other than those involving child abuse, it would adopt the Second Appellate District's rule that discovery of the *corpus delicti* occurs "when any competent person other than the wrongdoer or someone * * * [equally at

---

1. In his brief appellant contends that the trial court erred to his prejudice in denying his motions to dismiss his misdemeanor charge on statute-of-limitations grounds. Our review of the record has disclosed only one written motion and memorandum in support requesting dismissal on this ground and an entry by the trial court overruling that one motion.

fault] with him has knowledge of both the act and its criminal nature * * *." *Id.* at 137, 571 N.E.2d at 713.[2] The child-abuse exception carved out by the court limits the "discoverer" of the *corpus delicti* in such cases to responsible adults who have knowledge of both the act and the criminal nature of the act, and who are under a legal duty to report known or suspected child abuse pursuant to R.C. 2151.421.[3] Explicitly excluded from being a "discoverer" of the *corpus delicti* in child-abuse cases are the parents of the child because "for sundry reasons [they] may not always report the alleged sexual abuse or neglect in a timely manner." *Id.* at 141, 571 N.E.2d at 716.

That same logic leads us to conclude that, in cases not involving child abuse, a family member, such as the brother-in-law here, should be excepted as a "discoverer" because a family member does not fall within the ambit of discovering persons anticipated by the legislature, in R.C. 2901.13(F), to be likely to fulfill the public duty to timely report the commission of a crime by another family member. To decide otherwise would unacceptably allow certain criminals to avoid responsibility for their conduct. Public policy dictates that R.C. 2901.13(F) not be manipulated by an offender to allow him to be protected by his family from timely discovery of his crime.

For the above reasons, we hold that although appellant's brother-in-law testified that he knew appellant had disposed of the pump in approximately 1986, but had told no one until several years later, the discovery of the *corpus delicti* in the case *sub judice* occurred when Ford learned of the illegal disposal of its pump in January 1992. It was at that time that "any competent person other than appellant or anyone equally at fault with him" had knowledge of the *corpus delicti* of a crime. Because the *corpus delicti* remained undiscovered until January 1992, appellant's prosecution was not barred by the statute of limitations.[4]

---

2. *State v. Hensley* (Mar. 19, 1990), Montgomery App. No. 11410, unreported, 1990 WL 31840, was certified to the Ohio Supreme Court because the Second Appellate District's holding as to when the statute of limitations begins to run was in conflict with this court's decision in *State v. Buhl* (Nov. 30, 1983), No. C–830009, unreported, 1983 WL 5337, wherein we held that the *corpus delicti* is discovered for purposes of R.C. 2901.13(F) when the prosecution learns of the commission of the crime.

3. The court stated that its rejection of the appellate court's holding in *Hensley* was based on the determination by the appellate court that because the children knew the defendant's act was wrong, the children had discovered the *corpus delicti* of the sexual abuse. The court refused to put the burden to contact the authorities about the abuse on the child. There is nothing in the court's opinion rejecting the appellate court's definition of when the *corpus delicti* of a crime *is* discovered *in* cases not involving child abuse.

4. Appellant argues that the state failed to prove that the *corpus delicti* was not or could not be discovered any sooner. We read R.C. 2901.13(F) as requiring actual rather than constructive

■ We also overrule appellant's second assignment of error, which postulates that the trial court erred by denying his Crim.R. 29 motion to dismiss on the ground of insufficiency of the evidence. We hold that any claim of error regarding the denial of appellant's motion for acquittal pursuant to Crim.R. 29 was waived by his failure to renew the motion at the close of all the evidence. *Dayton v. Rogers* (1979), 60 Ohio St.2d 162, 14 O.O.3d 403, 398 N.E.2d 781.

■ Furthermore, we conclude that the court did not abuse its discretion in denying appellant's motion for a mistrial based upon the prosecutor referring to other items found in appellant's possession which allegedly belonged to Ford. The trial court instructed the jury that opening statements and closing arguments were not evidence, that stricken statements were not evidence and were to be ignored, and that any testimony concerning other property taken from the van or home of the appellant was to be disregarded as evidence and not to be considered for any purpose. Such curative instructions amply protected the appellant's right to a fair trial.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

KLUSMEIER, P.J., and GORMAN, J., concur.

discovery of the *corpus delicti.* Even if we assume, *arguendo,* that the statute should be construed according to the appellant's view, there was credible evidence presented to prove beyond a reasonable doubt that Ford Motor Company could not have discovered the illegal disposal of its pump prior to being informed of it being on appellant's father-in-law's property, where the pump was not inventoried material and Ford destroyed its internal records regarding purchases of equipment after six and one-half years.