OPINION
Robert Thomas appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of felonious assault of Anthony Pannell. After considering the eleven assignments of error he presented, we affirm the judgment of the trial court.
The incidents leading to Thomas' arrest and conviction arose from a domestic situation which occurred on May 9, 1998, at the home of Joanne Cheatwood, when Anthony Pannell observed Thomas grab Alfie Smith, Thomas' ex-girlfriend, by the throat and shove her against the refrigerator. Pannell stepped in between the two and attempted to stop the altercation. Subsequently, Smith locked Thomas out of the house. Thomas then left the area, but returned a short time later and wanted to speak with Anthony outside. Pannell went outside, he and Thomas exchanged words, and after a few minutes, Pannell tried to leave but Thomas punched him in the face, knocking him to the ground. Thomas then picked up a brick and hit Pannell twice, causing injuries to his eye, face, cheekbone and head. Then, Thomas got into his vehicle, and as he attempted to leave, he drove toward Pannell and his vehicle struck Pannell on the leg. During the altercation between Thomas and Pannell, Smith came out of the house and sprayed Thomas with pepper spray, and shortly thereafter, Cheatwood called the police. Patrolman Tusing of the Cleveland Police Department responded to the call and apprehended Thomas who had driven to the Fourth District Police Headquarters.
The grand jury returned an indictment against Thomas for felonious assault in connection with the injuries he inflicted upon Pannell and the court began Thomas' jury trial on September 9, 1998.
At trial, the state presented six witnesses: Pannell, Joanne Cheatwood, Damita Pannell, Patrolman Richard Tusing and Detective Lawerence Craft; the defense called Alfie Smith and Robert Thomas.
Pannell testified that after he attempted to resolve a dispute between Thomas and Smith, Thomas hit him over the head with a brick and then struck him with his automobile. Next, Cheatwood testified that after witnessing the dispute between Thomas and Smith, she asked Thomas to leave, and that after learning that Thomas had hit Pannell, she called 9-1-1. Damita Pannell then testified that she also witnessed the dispute between Thomas and Smith, that she went outside to get her husband, Anthony, and saw Thomas hit him over the head with a brick. When she attempted to help her husband, Thomas struck him with his car. The state then called Patrolman Tusing, who testified that upon arriving on the scene, he saw blood all over Pannell and he also saw Thomas driving up and down the street. Tusing further testified that he followed Thomas to the Fourth District Police Station where Thomas claimed he had been attacked by an unknown assailant. At that point, Officer Tusing arrested Thomas. The state's final witness, Detective Craft, testified that he obtained statements from Anthony and Damita Pannell and took several photographs of his injuries. At that point, the state rested.
In its case in chief, the defense called Alphie Smith, who testified that she became involved in a fight with Robert Thomas, that she never saw a brick, and that, during the altercation, she sprayed Thomas with pepper spray. Thomas testified in his own defense that the fight began when Anthony shoved him, and also that he does not remember hitting Anthony with a brick or his car.
Following presentation of the evidence, the court instructed the jury and deliberations began. During the course of its deliberations, the jury submitted several questions to the judge, asking whether the fist of a two-hundred and twenty-five pound man could be considered a deadly weapon or a dangerous ordinance, and whether a finding of guilty on the charge of felonious assault required that they find Thomas had used both an automobile and a brick. The court answered these questions in the negative.
The jury returned its verdict finding Thomas guilty of felonious assault and the court imposed a seven year sentence. Thomas now appeals and sets forth eleven assignments of error for our review.
Since assignments of error one, two and three concern similar issues, they will be considered together. They state:
 I. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT ANSWERED QUESTIONS OF THE JURY WITHOUT THE PRESENCE OF THE DEFENDANT AND IN THE ABSENCE OF COUNSEL.
 II. THE DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE COURT MADE A FACTUAL DETERMINATION IN ANSWERING QUESTIONS OF THE JURY.
 III. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT AMENDED THE INDICTMENT IN ANSWERING A JURY QUESTION.
Here, Thomas claims the court denied him due process by answering jury questions outside his presence and in the absence of his defense counsel, that the court made a factual determination when it instructed the jury that a fist of a two-hundred and twenty-five pound man could not be considered a deadly weapon or a dangerous ordinance, and that the court amended the indictment when it stated that if the jury found that Thomas used either a brick or an automobile, the crime of felonious assault had been committed.
The State maintains that the record is silent regarding whether Thomas or his counsel had been present when the court responded to the jury questions and that even if they had been absent, the court's communications constitute harmless error, because the court provided guidance regarding legal matters and did not usurp the jury's fact finding process. The state also contends the court did not err in its instruction regarding felonious assault.
The issue for our review is whether the trial court erred when it responded to the jury's questions.
R.C. 2945.33 states in pertinent part:
 When a cause is finally submitted the jurors must be kept together in a convenient place under the charge of an officer until they agree upon a verdict, or are discharged by the court. * * * Such officer shall not permit a communication to be made to them, nor make any himself except to ask if they have agreed upon a verdict, unless he does so by order of the court. Such officer shall not communicate to any person, before the verdict is delivered, any matter in relation to their deliberation.
While the procedures for answering communications received from a deliberating jury are not delineated in the revised code, established precedent in numerous cases suggests proper procedure is to summon both counsel to court and to respond to the inquiry on the record in open court. See e.g. State v. Maupin
(1975), 42 Ohio St.2d 473.
Further, the terms, "deadly weapon" and "dangerous ordnance" are defined in R.C. 2923.11 as follows:
 (A) "Deadly weapon" means any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon. (J) "Dangerous ordnance" means any of the following * * * (1) Any automatic or sawed-off firearm, zip-gun, or ballistic knife; (2) Any explosive device or incendiary device; * * * *
In conformity with these definitions, the answers provided by the trial court to the jury are proper in that the court instructed that a fist could not be considered a deadly weapon or a dangerous ordinance. Further, upon review of the indictment involving felonious assault, we agree with the trial court that the offense could have been committed with either a brick or an automobile. The court's response is legally correct. Finally, we note that any prejudice to Thomas is harmless, especially in light of the fact that the court's answer benefited, rather than harmed, Thomas. Therefore, we cannot conclude that the trial court erred when it answered the jury's questions. Accordingly, these assignments of error are overruled.
Assignments four through eight deal with similar issues and will be addressed together. They state:
 IV. DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE INVESTIGATING DETECTIVE IS ALLOWED TO EXPRESS HIS OPINION AS TO DEFENDANT'S GUILT.
 V. DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE COURT WOULD NOT ALLOW DEFENSE COUNSEL TO ARGUE BUT ALLOWED THE PROSECUTOR TO EXPRESS HIS OPINION OF DEFENDANT'S GUILT.
 VI. DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE DEFENDANT COULD BE GUILTY EVEN IF THE CAUSE OF THE INJURY WAS FROM SOME OTHER PERSON.
 VII. DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE COURT GAVE CONFLICTING INSTRUCTIONS CONCERNING THE BURDEN OF PROVING EXTREME EMOTIONAL STRESS TO REDUCE THE CHARGE FROM FELONIOUS ASSAULT TO AGGRAVATED ASSAULT.
 VIII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS CONVICTED UNDER A DUPLICITOUS INDICTMENT.
Thomas maintains that Detective Craft's testimony regarding his opinion of Thomas' guilt constitutes reversible error, that prosecutorial misconduct during closing arguments denied him a fair trial, and that the court improperly instructed the jury regarding intervening cause and aggravated assault. He further claims the court denied him due process of law because the indictment joined two offenses in one count.
The State, however, maintains that Thomas cannot raise any of these matters on appeal because he failed to object or raise them at trial.
The issues presented for review concern whether the trial court denied Thomas a fair trial in this case.
Thomas points to the following dialogue as the basis for his fourth assignment of error:
 Q. Detective, what did you do after you interviewed all the parties?
 A. I gathered all the information that I could and presented it to * * * the grand jury.
Q. Was that the conclusion of your investigation?
A. Yes.
 Q. And based on your investigation, do you conclude that the defendant, in fact, did commit a crime that night?
A. Yes.
Thomas did not object to this testimony or seek any curative instruction from the court.
In State v. Slagle (1992), 65 Ohio St.3d 597, the court stated:
 An appellate court will not consider an alleged error that the complaining party did not bring to the trial court's attention at the time the alleged error is said to have occurred.
* * *
 The appellate court must examine the error asserted by the defendant-appellant in light of all the evidence properly admitted at trial and determine whether the jury would have convicted the defendant even if the error had not occurred.
However, Crim.R. 52 (B) defines plain error:
 * * * Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.
In State v. Moreland (1990), 50 Ohio St.3d 58, the court stated:
 Plain error exists only where it is clear that but for the error, the outcome of the trial clearly would have been otherwise.
Regarding Thomas' claim of prosecutorial misconduct, the court in State v. Turner (1993) 91 Ohio App.3d 153, stated:
 The trial court instructed the jury that opening statements and closing arguments were not evidence * * *. Such curative instructions amply protected the appellant's right to a fair trial.
Further, our review is guided by State v. Phillips (1995),74 Ohio St.3d 72:
 The conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives defendant of a fair trial.
Additionally, regarding Thomas' claim of improper jury instructions, in State v. Underwood (1983), 3 Ohio St.3d 12, the court stated in its syllabus:
 The failure to object to a jury instruction constitutes a waiver of any claim or error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise.
With regards to Thomas' claim of a duplicitous indictment, we note that Crim.R.12 (B) states:
 Prior to trial, any party may raise by motion any * * * objection * * * that is capable of determination without the trial of the issue. The following must be raised before trial * * * defenses and objections based on defects in the indictment * * *
A review of the record in this case reveals that Thomas failed to object to the detective's testimony, the prosecutor's statements during closing argument or the jury instructions and therefore has waived all but plain error. Further, the judge properly instructed the jury that opening and closing statements are not evidence. Additionally, Thomas failed to object to the indictment prior to trial and therefore cannot raise this matter on appeal.
In reviewing the testimony and other evidence properly admitted at trial, we cannot conclude that the outcome would have been otherwise absent these errors. Therefore, these assignments of error are without merit.
 IX. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HIS MOTION FOR JUDGMENT OF ACQUITTAL WAS OVERRULED AS THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Thomas argues that his conviction of felonious assault is against the manifest weight of the evidence because the police did not produce the brick and because the testimony failed to prove that he struck Anthony with his car.
The state maintains that Damita and Anthony Pannell testified that Thomas struck Anthony with a brick and his car and that medical records and photographs, along with Ms. Cheatwood's testimony, provided corroborating evidence to sustain a conviction of felonious assault.
The court in State v. Martin (1983), 20 Ohio App.3d 172, stated:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 Additionally, the court in State v. Thompkins (1997), 78 Ohio St.3d 380, stated:
 Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicated clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.
In this case, the state assumed the burden to prove Thomas' guilt of felonious assault beyond a reasonable doubt. Felonious assault is defined by R.C. 2903.11 as follows:
 (A) No person shall knowingly: (1) Cause serious physical harm to another * * *
In support of its burden, the state offered testimony from Anthony Pannell, who testified that he witnessed a fight between Thomas and Alfie Smith, that he attempted to stop the fight, that he went outside to talk to Thomas and that after a few minutes, Thomas became angry and hit him with a brick, causing severe injuries to his head and face. Additionally, Pannell stated that Thomas knocked him to the ground and as he attempted to stand up, Thomas nearly ran him over with his car, striking him in the leg.
Joanne Cheatwood testified that she asked Thomas to leave after she witnessed a dispute between him and Smith and that after learning that Thomas had hit Pannell, she called 9-1-1. The state also offered testimony from Pannell's wife, Damita, who stated that she went outside to talk to Anthony and saw Thomas hit him with a brick and that as she attempted to help Anthony to his feet, Thomas hit him in the leg with his car.
Further, the state offered the testimony of Officer Richard Tusing, who testified that when he arrived at the scene, he observed Pannell, and Thomas's car, covered with blood; however, he did not recover a brick from the scene. Additionally, the state offered the testimony of Detective Lawrence Craft, who stated that during his investigation of this incident, he obtained a statement from Pannell, took several pictures of his injuries, interviewed Thomas, and determined that Thomas had assaulted Pannell.
The defense offered the testimony of Alfie Smith, who stated that she initiated the fight between herself and Thomas, that she locked him out of the house, and that when she went back outside to talk to him, she sprayed him with pepper spray. Further, she testified that she did not see him hit Pannell with a brick or his car.
The defense also offered the testimony of Robert Thomas, who stated that he had been drinking, that after the fight with Smith he and Pannell went outside to talk, that Pannell hit him in the face, and that he did not remember anything after that except that someone pepper sprayed him.
After reviewing the entire record in this case, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we cannot conclude that in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice. Accordingly, this assignment of error is not well taken and it is overruled.
 X.
DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.
Thomas claims ineffective assistance of counsel because his attorney failed to object to Detective Craft's testimony and the court's jury instructions, and also failed to make a statement on behalf of Thomas at sentencing.
The state urges that Thomas' conviction should be affirmed because the' evidence presented at trial supported his conviction and because he cannot demonstrate that his counsel's performance prejudiced him.
The issue for our review, then, is whether Thomas had been denied effective assistance of counsel.
In Strickland v. Washington (1984), 466 U.S. 668, the court established a two-part test for consideration in addressing claims of ineffective assistance of counsel:
 * * * First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.
In State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, the court stated:
 In order to show prejudice, the defendant must demonstrate a reasonable probability exists that, absent counsel's error, the result of the trial would have been different.
Prior to sentencing, the court afforded defense counsel and Thomas an opportunity to speak. Thomas spoke on his own behalf, however, counsel declined the opportunity to speak on behalf of her client. Additionally, as we have already determined that even if defense counsel objected to the Detective Craft's testimony and to the jury instructions, the outcome of Thomas' trial would have remained the same.
In accordance with Bradley, Thomas has failed to demonstrate that a reasonable probability existed that but for counsel's actions, the outcome of the trial would have been different. Thus, this assignment of error is overruled.
 XI. APPELLANT WAS DENIED DUE PROCESS OF LAW AND SUBJECTED TO A CRUEL AND UNUSUAL PUNISHMENT WHEN APPELLANT WAS IMMEDIATELY SENTENCED BY THE COURT.
Thomas maintains that the court subjected him to cruel and unusual punishment when it imposed sentence without obtaining a pre-sentence investigation report because it lacked sufficient information concerning his background, history and characteristics, and this information may have persuaded the court to exercise leniency in sentencing.
The state, however, maintains that the court considered the factors listed in R.C. 2929.12 (B) (1), (D) (2), and reviewed Thomas' prior criminal record before sentencing and therefore, did not deny him due process.
The issue for our review, then, is whether the court violated Thomas' constitutional rights when it proceeded to sentencing him immediately after receiving the verdict of the jury.
In State v. Cyrus (1992), 63 Ohio St.3d 164, 166,586 N.E.2d 94, 96, the court stated:
 This court has held that: `A silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12.' State v. Adams (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361, paragraph three of the syllabus; accord State v. O'Dell (1989), 45 Ohio St.3d 140, 147, 543 N.E.2d 1220, 1227.
See also State v. Brown (1995), 108 Ohio App.3d 489.
A review of the record in this case indicates that counsel failed to object to immediate sentencing and also that the court afforded Thomas an opportunity to be heard before it imposed a sentence. Further, in accordance with Cyrus and Brown, we conclude that the court properly considered the statutory factors mandated by R.C. 2929.12 prior to its imposition of Thomas' sentence.
Therefore, we conclude that the court did not err when it sentenced Thomas immediately after dismissing the jury. Additionally, because counsel failed to timely object, this assignment of error has been waived. Therefore, this assignment of error is without merit. Accordingly, the judgment of the trial court is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J., and
 LEO M. SPELLACY, J., CONCUR
 _______________________ JUDGE TERRENCE O'DONNELL