OPINION
Appellant, David J. Barksdale, brings this appeal from a judgment of the Lake County Court of Common Pleas finding him guilty of unlawful possession of a dangerous ordnance, with a firearm specification, and having a weapon while under a disability, following a jury trial.
On December 29, 1999, appellant was indicted by the Lake County Grand Jury on one count of unlawful possession of a dangerous ordnance, a felony of the fifth degree, in violation of R.C. 2923.17, with a firearm specification pursuant to R.C.2941.141; and one count of having a weapon while under a disability, a felony of the fifth degree, in violation of R.C.2923.13. Appellant entered a plea of not guilty, and this matter proceeded to a jury trial.
On March 15, 2000, the jury found appellant guilty as charged. A judgment entry dated May 11, 2000 reflected that the trial court sentenced appellant to serve a concurrent term of eleven months in prison for unlawful possession of a dangerous ordnance and having a weapon while under a disability. Appellant was also sentenced to an additional term of one year in prison for the firearm specification, which was to be served prior to and consecutive with the above stated prison term.
Appellant now appeals this judgment, asserting a single assignment of error for our review:
 "The trial court's judgment of conviction rendered against Defendant was against the manifest weight of the evidence presented at the trial on this matter."
 Although presented as a manifest weight of the evidence question, appellant's argument is really one of sufficiency of evidence. In essence, appellant contends that there was insufficient evidence to prove beyond a reasonable doubt that he knowingly acquired, possessed, or owned a weapon within the provisions of R.C. 2923.13 and 2923.17.
Before we may consider the sufficiency of evidence analysis, we must determine whether appellant properly preserved this issue for appellate review.
"In order to preserve the right to appeal the sufficiency of evidence upon which a conviction is based, a defendant must timely file a Crim.R. 29 motion for acquittal with the trial court."[1]State v. Perry (Aug. 29, 1997), Trumbull App. No. 94-T-5165, unreported, 1997 WL 590789, at 10. Thus, "[i]f a Crim.R. 29 motion is not made by a defendant, he or she waives any sufficiency of evidence argument on appeal." Perry at 10. See, also, State v. Roe (1989), 41 Ohio St.3d 18. Furthermore, "any claim of error regarding the denial of appellant's motion for acquittal pursuant to Crim.R. 29 [is] waived by his failure torenew the motion at the close of all the evidence." (Emphasis added.) State v. Turner (1993), 91 Ohio App.3d 153, 157. See, also, Dayton v. Roger (1979), 60 Ohio St.2d 162, 163; State v.Thomas (Oct. 11, 1996), Trumbull App. No. 95-T-5253, unreported, 1996 WL 648947, at 2.
In the case at bar, the record reveals that at the close of the state's case, appellant moved for an acquittal pursuant to Crim.R. 29. When the trial court overruled this motion, appellant elected to present a defense. However, at the close of all the evidence, appellant failed to renew his Crim.R. 29 motion. Consequently, because appellant did not renew his Crim.R. 29 motion, he waived any sufficiency of evidence argument on appeal. We, therefore, conclude that appellant has not preserved his right to appeal based on insufficient evidence.
Despite this determination, in the interest of justice, we will consider appellant's assignment of error.
To determine whether the evidence before the trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.) State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 As mentioned earlier in this opinion, appellant does not argue that he was not under a disability, or that the weapon discovered did not constitute a dangerous ordnance, or was not proven to be an operable firearm. Rather, the gist of appellant's argument is the state did not present sufficient evidence with respect to the charges against him to prove beyond a reasonable doubt that he knowingly acquired, owned or possessed this weapon.
At trial, appellee presented the testimony of Officer Eric Kacvinsky ("Officer Kacvinsky"), Officer Julius K. Ponder ("Officer Ponder"), and Mitchell J. Wisniewski ("Mr. Wisniewski"), while appellant testified on his own behalf. A sawed-off shotgun, two shotgun shells and photographs illustrating the contents of the trunk were among the items admitted into evidence by appellee.
Officer Kacvinsky of the Painesville Police Department provided the following testimony regarding the events at issue. Apparently, on November 17, 1999, an apartment was burglarized wherein several weapons were stolen. The landlord at the apartment complex was able to provide the police with a license plate of the suspected getaway vehicle involved in the burglary. After further investigation, the police discovered that the vehicle in question was registered to Tamara Aston ("Ms. Aston").
That evening, at approximately 6:30 p.m., Officer Kacvinsky noticed a vehicle matching the license plate provided by the landlord being driven by Ms. Aston with appellant in the passenger side seat. After proceeding to follow the vehicle, Officer Kacvinsky executed a felony stop and requested assistance from other officers.
Once back-up arrived on the scene, Officer Kacvinsky removed appellant from the vehicle and placed him in handcuffs. A search of appellant's person revealed that he had two .410 shotgun shells located in his right pants pocket. At this point, Officer Kacvinsky asked appellant "[w]hat are the shells for?" Appellant's response was "[t]hey are for my gun."
After securing appellant in the back of a police cruiser, Ms. Aston consented to a search of her vehicle. The search produced a large knife, which was found on the driver's seat, along with numerous weapons, including the sawed-off shotgun, which was located in the trunk of the vehicle. Subsequently, both appellant and Ms. Aston were taken into police custody for questioning.
At the police station, appellant was taken into an interview room for a period of time.[2] During the questioning, appellant told Officer Kacvinsky that while he purchased the shotgun from an individual named "Twin" in Painesville, the weapon was not physically given to him. Rather, he was supposed to pick it up on November 17, 1999. When Officer Kacvinsky questioned appellant, again, about the .410 shotgun shells, he stated that "they were for his .410 [shotgun]." In addition, the description given by appellant of the shotgun matched the weapon found in the trunk. Even after being shown the shotgun by Officer Kacvinsky, appellant confirmed that it was, in fact, his gun.[3]
However, appellant denied knowing that the shotgun was in the trunk of Ms. Aston's vehicle.[4]
Likewise, Officer Ponder of the Painesville Police Department had an opportunity to question appellant while he was in custody at the police station. Officer Ponder confirmed that appellant also stated to him that he had purchased a shotgun from an individual named "Twin" for approximately $60. According to Officer Ponder, appellant told him "[h]e was going to take [the shotgun] back to Cleveland and make a profit of $150.00 for it." As with Officer Kacvinsky, appellant made an admission to Officer Ponder regarding the ownership of the weapon.
Once the police seized the shotgun and the shotgun shells, Mr. Wisniewski, a forensic fingerprint examiner at the Lake County Regional Forensic Laboratory, received these items to be processed for fingerprints. At trial, Mr. Wisniewski indicated that he was unable to obtain fingerprints with respect to these items. However, after looking for toolmark impressions on the rim of the shotgun shells, Mr. Wisniewski determined that one of the shells found on appellant's person had been placed in the chamber of the shotgun.
At the close of appellee's case, appellant took the stand and testified to an entirely different scenario of events from the one relayed by the officers who testified. According to appellant, when he entered Ms. Aston's vehicle, he inadvertently sat on the shotgun shells. He then picked up these shells and placed them in his pocket out of fear that Ms. Aston's son would discover them. Appellant's testimony was in direct conflict with that of Officer Kacvinsky and Officer Ponder in that appellant maintained that he never purchased, possessed, or owned a sawed-off shotgun, and had never seen the shotgun prior to November 17, 1999.
As stated earlier in this opinion, appellant was charged with violating R.C. 2923.13. This statute prohibits a person from knowingly acquiring, having, carrying or using a firearm when that person had been previously convicted of an offense involving the illegal possession of an abusive drug.[5] Because the parties stipulated on the record that appellant had a prior conviction for possession of drugs, a felony of the fifth degree, in violation of R.C. 2925.11, it is not necessary for this court to examine in any detail the facts of the previous drug felony in order to establish the disability charge.
Appellant was also charged with violating R.C. 2923.17(A), which states that "[n]o person shall knowingly acquire, have, carry, or use any dangerous ordnance." A "dangerous ordnance" includes any "sawed-off firearm." R.C. 2923.11(K)(1).
Under both R.C. 2923.17 and 2923.13, the first requirement, acquisition of a dangerous ordnance, was established by the testimony provided by the police officers at trial. While there were no fingerprints proving that appellant ever had any contact with the sawed-off shotgun, Officer Kacvinsky and Officer Ponder testified that appellant admitted to purchasing the weapon from an individual named "Twin" in Painesville. When Officer Kacvinsky questioned appellant at the police station about the shotgun shells found on his person, appellant replied "they were for his .410." Appellant was also able to provide an accurate description of the weapon. And, after being shown the shotgun by Officer Kacvinsky at the police station, appellant confirmed that this was, indeed, his gun.
The second requirement under both R.C. 2923.17 and 2923.13 is knowledge. "Knowingly" is defined by R.C. 2901.22(B) as follows:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 While appellant denied knowing that the sawed-off shotgun was in the trunk of Ms. Aston's vehicle, he was in possession of two shotgun shells which "were for his .410 [shotgun]." Furthermore, the testimony of Mr. Wisniewski established that one of the shotgun shells found on appellant's person had been placed in the chamber of the shotgun. In considering this physical evidence, in conjunction with appellant's alleged description of the shotgun and the claim of ownership, a reasonable fact finder could draw the inference that appellant had knowledge the shotgun was in the trunk of the vehicle to which he was a passenger.
In summation, we conclude that there was sufficient evidence that any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. Appellant's statements to the police officers, combined with the marked ammunition found on his person, provided substantial evidence to support the conclusion that appellant was more than just coincidentally in a vehicle containing the disputed weapon. Considering the evidence in a light most favorable to the prosecution, we believe that a jury could have found appellant guilty beyond reasonable doubt of unlawful possession of a dangerous ordnance and having a weapon while under a disability.
Finally, under his lone assignment of error, appellant challenges the trial court's ability to impose a one-year mandatory prison term for the firearm specification with respect to the charge of unlawful possession of a dangerous ordnance. To support his contention, appellant cites to R.C. 2929.14(D)(1)(d), which prohibits imposing an additional prison term for a firearm specification for violating R.C. 2923.123, to-wit; illegal conveyance, possession or control of a deadly weapon or dangerous ordnance in a courthouse.[6] According to appellant, to permit the firearm specification to attach to an unlawful possession of a dangerous ordnance charge promotes "arbitrary and subjective prosecution," which violates the Fourteenth Amendment and equal protection guarantees.[7]
An examination of the record reveals that at the trial court level, appellant filed a motion to dismiss the firearm specification, urging the court to adopt his interpretation of the statute.[8] According to appellant, the appropriate application of the statute "require[d] an interpretation which would extend the prohibition of charging a specification for a dangerous ordinance [sic] in a courthouse to dangerous ordnances possessed in other areas." To find otherwise would promote "selective prosecution." However, appellant failed to argue in his motion below that the statute violated the Fourteenth Amendment to the United States Constitution and thus denied him equal protection under the law.
Under these circumstances, appellant has waived the issue concerning the constitutionality of imposing a firearm specification on an unlawful possession of a dangerous ordnance charge by not raising it before the trial court. State v. Awan
(1986), 22 Ohio St.3d 120, syllabus. Therefore, we need not consider this argument on appeal.
Based on the foregoing analysis, appellant's sole assignment of error is without merit, and the judgment of the trial court is, hereby, affirmed.
JUDGE JUDITH A. CHRISTLEY
FORD, P.J., NADER, J., concur.
[1] Crim.R. 29(A) states:
 "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
[2] According to Officer Kacvinsky, appellant was Mirandized.
[3] Appellant denied ownership as to the other guns found in Ms. Aston's vehicle.
[4] Officer Kacvinsky further testified that appellant was not in possession of keys which could access the trunk of Ms. Aston's vehicle. Moreover, the officer was uncertain as to whether the back seats to the vehicle folded down so that appellant could obtain access to the trunk where the shotgun was located.
[5] R.C. 2923.13(A) provides:
 "Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance * * *[.]"
 The various disabilities are described in R.C. 2923.13(A)(1) through (5). As an aside, we note that this court recently determined that "[t]he plain language of [R.C. 2923.13] does not support the contention that notice to a defendant of his disability status is an essential element of the offense. Rather, R.C. 2923.13 only requires a defendant to knowingly acquire, have, carry, or use a weapon while a disability exists." State v. Toddy (Mar. 30, 2001), Ashtabula App. No. 2000-A-0004, unreported, 2001 Ohio App. LEXIS 1549, at 12.
[6] Although appellant referred to R.C.2929.14(D)(1)(b) in his appellate brief, the relevant subsection is, in fact, (D)(1)(d).
[7] We note that at oral argument, appellant indicated that this, indeed, was not intended as a constitutional attack but was merely another prong of his manifest weight argument. We, however, fail to see how appellant's interpretation of the statute would support a manifest weight or sufficiency of the evidence argument. A claim of "subjective prosecution" has no relevance to a claim of manifest weight or sufficiency of evidence.
[8] This motion was made on May 3, 2000, one day prior to the sentencing hearing.