[Cite as *State v. Blackwell*, 2012-Ohio-3253.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97507**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# KAMAL BLACKWELL

DEFENDANT-APPELLANT

# JUDGMENT:
# AFFIRMED; REMANDED FOR CORRECTION
# OF JOURNAL ENTRY

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-553056

**BEFORE:** Jones, J., Blackmon, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 19, 2012

**ATTORNEY FOR APPELLANT**

Joseph Vincent Pagano
P.O. Box 16869
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY: Marcus A. Henry
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, Kamal Blackwell, appeals his convictions and sentence. We affirm the convictions, but remand for a corrected sentencing entry.

I.   Procedural History and Facts

{¶2} In August 2011, an indictment was returned against Blackwell, charging him with the following crimes: Count 1, breaking and entering, occurring on or about May 14, 2011 to May 16, 2011; Count 2, theft, occurring on or about May 14, 2011; Count 3, criminal damaging or endangering, occurring on or about May 14, 2011; Count 4, arson, occurring on or about May 15, 2011 to May 16, 2011; Count 5, aggravated menacing, occurring on or about December 23, 2010 to May 16, 2011; and Counts 6, 7, and 8, menacing by stalking, occurring on or about December 23, 2010 to May 16, 2011.

{¶3} The case proceeded to a jury trial.   At the conclusion of the state's case, the defense made a Crim.R. 29 motion for acquittal, which was denied.   Blackwell testified. The defense did not renew its Crim.R. 29 motion at the conclusion of its case.   The jury returned guilty verdicts on all counts.   The trial court sentenced Blackwell to a three-year prison term.

{¶4} The charges and convictions resulted from the following trial testimony. Blackwell and the victim, Tammy Mitchell, had been involved in an "on-and-off" romantic relationship for a number of years.   Mitchell testified that Blackwell had been

physically violent toward her throughout the relationship, and that the police had been involved at times because of the violence. Mitchell testified that she was scared of Blackwell and eventually ended the relationship.

{¶5} Mitchell admitted that she has a criminal record. She also admitted that after charges in another matter had been brought against Blackwell, she wrote a letter stating that the allegations were not true. She testified that she wrote the letter because she wanted to "help him. Because [she] believed he was serious, he wasn't going to do it again. And he did. He put his hands on [her] again."

{¶6} Relative to the charges here, Mitchell testified that on an evening in May 2011, she was in her apartment when she heard Blackwell outside trying to get her attention. When she looked out of a window in her apartment, she saw Blackwell with the license plates to her car, which had been parked in the lot for the apartment building. Blackwell told Mitchell that he would return to "tear up" her "stuff," and then fled. Mitchell then went outside to her car and saw that the windshield wipers and rear bumper had been pulled off and the antenna was broken. She testified that she did not actually see Blackwell damaging her car. She called the police.

{¶7} Cleveland police officer Andrew Harhay responded to Mitchell's apartment. According to his report, that day was May 14, 2011. Officer Harhay saw that the license plates were missing from Mitchell's car; he also saw the damage to Mitchell's vehicle and described it as "fresh." The officer testified that Mitchell told him that she saw Blackwell damage her car.

{¶8} Mitchell testified that the following day, May 15, 2011, in the early morning hours a neighbor informed her that her car was on fire. Mitchell went outside to find her car burned to its frame; she called the police. Mitchell testified that she had not had any mechanical problems with the car.

{¶9} Later that day, Cleveland police detective Nurrudin Jinna went to Mitchell's apartment to investigate the fire, which the police had categorized as "suspicious." Detective Jinna testified that the car had burned to its frame and was of no value. He found a large brick inside the car on the driver's seat and opined that the fire originated from inside the passenger compartment of the vehicle. After his investigation, Jinna concluded that the fire had been intentionally set. He identified Blackwell as a person of interest. The detective also testified that he believed Mitchell was in fear for her life because of Blackwell.

{¶10} Mitchell testified that the following day, May 16, Blackwell called her; she recorded the conversation and the recording was admitted into evidence. During the conversation, Blackwell threatened to throw a Molotov cocktail into her apartment. Detective Jinna explained that a Molotov cocktail is a plastic or glass container filled with a flammable liquid that is lit and thrown into an area to cause a fire. Also during the conversation, Mitchell asked Blackwell why he did "that" to her car; Blackwell remained silent. Mitchell called the police because of Blackwell's threat.

{¶11} Officer Daniel McCandless responded to the call. He listened to the recorded conversation. McCandless described the caller as "very upset" and stated that

the caller made mention of a Molotov cocktail and burning down the apartment building.

{¶12} In regard to any criminal behavior by Blackwell toward Mitchell in December 2010, Mitchell testified that she could not specifically recall, but that Blackwell had threatened her a "million" times. However, Officer Leonard Moore testified that Mitchell came to him at the police station on December 23, 2010, "nervous, scared, and frustrated" because of Blackwell's abuse.

{¶13} Blackwell denied all the allegations. He testified that he started a new relationship in December 2010, but Mitchell wanted to marry him. According to Blackwell, Mitchell told him that if she could not have him, no one would, and she was going to break up his new relationship. Blackwell testified that Mitchell told him that she was going to have her family "jump" him. In response, Blackwell told Mitchell that "if we go to war * * * anything goes * * *."

{¶14} Blackwell denied any incidents in December 2010, stating that he did not have contact with Mitchell from December 22, 2010 through December 26, 2010, because he was with his family celebrating the holidays. He denied all of the May 2011 incidents, stating that he was with his family on May 14 and the rest of the week he was with his cousin helping her move. According to Blackwell, the charges would not have been brought against him if the Cleveland Police Department had done a thorough investigation and if the county corruption situation had not prevented him from presenting his alibi witnesses.

{¶15} Blackwell admitted to July 2009 assault and domestic violence convictions,

and a May 2010 domestic violence conviction.   Mitchell was the victim.

**{¶16}** Blackwell raises the following assignments of error for our review:

I.   The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.

II.   Appellant's convictions are against the manifest weight of the evidence.

III.   The trial court erred by sentencing appellant for convictions that are allied offenses of similar import that should have merged.

IV.   The trial court's imposition of consecutive sentences was contrary to law and an abuse of discretion.

## II. Law and Analysis

A.   Sufficiency of the Evidence

**{¶17}** In his first assignment of error, Blackwell contends that the evidence was insufficient to sustain the convictions.   Blackwell moved for acquittal under Crim.R. 29 at the close of the state's case, but did not renew his motion at the close of his case. This court has previously held that to preserve a sufficiency of evidence argument on appeal, a defendant must move for acquittal under Crim.R. 29 at the conclusion of the state's case *and* the conclusion of his case.   *State v. Evans*, 8th Dist. No. 85396, 2005-Ohio-3847, ¶ 11, citing *State v. Adams*, 11th Dist. No. 2003-L-110, 2005-Ohio-1107; *State v. Turner*, 91 Ohio App.3d 153, 631 N.E.2d 1117 (1st Dist.1993).  "Failure to move for an judgment of acquittal waives all but plain error regarding the sufficiency of the evidence."   *Evans* at *id.*, citing *State v. Ellsworth*, 8th Dist. No. 83040,

2004-Ohio-4092; *State v. Reid*, 8th Dist. No. 83206, 2004-Ohio-2018.

**{¶18}** Under Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Notice of plain error should be done "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

**{¶19}** Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and a sufficiency of the evidence review require the same analysis. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. In analyzing whether a conviction is supported by sufficient evidence, the reviewing court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Carter*, 72 Ohio St.3d 545, 1995-Ohio-104, 651 N.E.2d 965.

1.  Breaking and Entering; Theft; Criminal Damaging

**{¶20}** R.C. 2911.13(B) governs breaking and entering and provides that "[n]o person shall trespass on the land or premises of another, with purpose to commit a felony." R.C. 2913.02(A)(1) governs theft and provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over

either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent." Criminal damaging is prohibited under R.C. 2909.06(A)(1), which reads that "[n]o person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent * * * [k]nowingly, by any means."

{¶21} The state's theory of the case was that Blackwell committed the above mentioned crimes on May 14, 2011. The trial testimony relative to that date was that Mitchell heard Blackwell outside her apartment and when she looked out a window, she saw Blackwell with the license plates from her vehicle. Blackwell told Mitchell that he would be back to "tear up" her stuff; he then fled.

{¶22} After Blackwell fled, Mitchell went outside to view her car that was parked in the lot for her building, and found that it had been damaged. She called the police, and the responding officer saw that the license plates were missing and there was what he described as "fresh" damage to the car.

{¶23} The above mentioned testimony was sufficient to prove the crimes of breaking and entering, theft (a felony), and criminal damaging.

2. Arson

{¶24} R.C. 2909.03(A)(1) governs arson and provides that "[n]o person, by means of fire or explosion, shall knowingly * * * [c]ause, or create a substantial risk of, physical harm to any property of another without the other person's consent." The state's theory of the case was that Blackwell committed arson on May 15, 2011. The testimony

relative to that date was that in the early morning hours, a neighbor called Mitchell and told her that her car was on fire. The car burned to its frame and, as a result, was of no value.

**{¶25}** Detective Jinna investigated the fire, which had been categorized as "suspicious." After his investigation, he concluded that the fire had been intentionally set from inside the passenger compartment of the car. Jinna identified Blackwell as a person of interest. The above testimony was sufficient to support a conviction for arson.

3. Aggravated Menacing

**{¶26}** Aggravated menacing is governed by R.C. 2903.21(A) and provides that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person * * *." The charge for aggravated menacing was based on the May 16, 2011 phone call. The testimony relating to the incident was that Blackwell called Mitchell and threatened to throw a Molotov cocktail into her apartment.

**{¶27}** Mitchell recorded the phone message and called the police. Officer McCandless responded to the call and listened to the recording. He described the caller as "very upset" and stated that the caller made mention of a Molotov cocktail and burning down the apartment building. We find that all of this testimony was sufficient to sustain the aggravated menacing conviction against Blackwell.

4. Menacing by Stalking

{¶28} Blackwell was charged with three counts of menacing by stalking under R.C. 2903.211(A)(1). That statute provides that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." "Pattern of conduct" is defined under R.C. 2903.211(D) as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents."

{¶29} The state's charges against Blackwell for menacing by stalking were based on each of the three incidents that occurred over the three days from May 14, 2011 through May 16, 2011. We find the testimony relative to those incidents sufficient to sustain the menacing by stalking charges.

{¶30} Under a plain error analysis, sufficient evidence existed to sustain all the charges against Blackwell. The first assignment of error is therefore overruled.

B. Manifest Weight of the Evidence

{¶31} In his second assignment of error, Blackwell challenges his convictions as being against the manifest weight of the evidence. The concept of manifest weight of the evidence differs from that of sufficiency of the evidence. Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. The Ohio Supreme Court has explained the standard to be applied to determine whether a criminal conviction is against the manifest weight of the evidence as follows:

"When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶32} To determine whether a case is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Thompkins* at *id.,* citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). An appellate court should reverse the conviction and order a new trial only if it concludes that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice. *Thompkins* at *id.*

{¶33} The gist of Blackwell's contention that the convictions were against the weight of the evidence is based on the contradictions between what Mitchell told the police and her trial testimony, her admitted lies, and her criminal record. However, the resolution of issues of credibility is a matter primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶34} In reviewing this case under the weight of the evidence standard, we find the following approach taken by the Third Appellate District in *State v. Bierbaum*, 3d Dist. No. 13-88-18, 1990 WL 35401 (Mar. 14, 1990), fitting:

> The word "primarily" could imply that in some instances the issue of credibility may become an issue for redetermination upon review.

However, such instances would be quite rare. The demeanor of witnesses, the manner of their responses, and many other factors observable by a jury (or judge if he be the trier of fact) simply are not available to an appellate court on review. While there may exist isolated rare cases in which the testimony of a witness is so garbled and internally contradictory, or so opposed to established scientific fact, as to warrant a reviewing court to exclude it from consideration in determining an issue of manifest weight, such an instance is not here presented. There is some contradiction, there is some impeachment, but there is no exceptional situation presented. Here the situation was fully capable of resolution by a jury which had heard the testimony given and observed the witness giving it. We conclude that no exception is here involved and the general rule must prevail. The credibility of the witnesses was here a matter solely and properly for determination by the jury. It by its verdict assigned full credibility to the testimony presented by the witnesses for the state. Having done so this court assigns such credibility and having done so, and having reviewed carefully the transcript of evidence, finds that the verdict was not against the weight of the evidence.

{¶35} In light of the above, the second assignment of error is overruled.

C. Sentencing

{¶36} Blackwell's third and fourth assignments of error challenge his sentence.

We review felony sentences under the standard set forth in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. First, we examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision is then reviewed under an abuse-of-discretion standard.

### 1. Allied Offenses

**{¶37}** At sentencing, the state conceded that some of the counts merged. Specifically, the state conceded that Count 3, criminal damaging, merged with Count 2, theft; and Count 5, aggravated menacing, Counts 6 and 8, menacing by stalking, merged with Count 7, menacing by stalking. The state therefore elected to proceed with sentencing on Counts 1, 2, 4, and 7. In his third assignment of error, Blackwell contends that there was "error by not merging more offenses as being allied." Blackwell agreed at the sentencing hearing to the state's recitation of merger.[1]

**{¶38}** The Ohio Supreme Court has previously held that failure to raise the issue of merger in the trial court constitutes a waiver of the error claimed. *State v. Comen*, 50 Ohio St.3d 206, 211, 553 N.E.2d 640 (1990). We are cognizant that *Comen* has been contradicted by *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923. *See State v. Baker*, 8th Dist. No. 97139, 2012-Ohio-1833, ¶ 16, fn. 2. In *Underwood*, the Ohio Supreme Court addressed the issue of whether an agreed recommended sentence as part of a plea bargain between the state and a defendant waives the issue of merger of

---

[1] *See* tr. 502-503.

charges. The Court held that it did not, unless the defendant specifically stipulates to a separate animus or separate acts at either the plea hearing or sentencing hearing. *Id.* at ¶ 26-27.

{¶39} Here, the state's reasoning for not merging the counts Blackwell now challenges was that they were separate acts, i.e., committed on different days, or they were committed with a separate animus.[2] The defense agreed to the state's reasoning. Thus, this issue is moot because Blackwell agreed with the state.

{¶40} In light of the above, the third assignment of error is overruled.

2. Consecutive Sentences

{¶41} For his final assigned error, Blackwell contends that the trial court erred and abused its discretion by sentencing him to consecutive terms. We disagree.

{¶42} Through the enactment of H.B. 86, the General Assembly recently amended Ohio's sentencing statutes. H.B. 86 became effective on September 30, 2011, and Blackwell was sentenced on October 6, 2011; therefore, the amendments were applicable to him. Relative to this appeal, the revisions under H.B. 86 now require a trial court to make specific findings when imposing consecutive sentences. Specifically, R.C. 2929.14(C)(4) provides as follows:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is

---

[2] *See* tr. 501-502.

necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶43}** At sentencing, the trial court made the following findings relative to the imposition of consecutive sentences:

So the Court will run Counts 4 and 7 consecutive for 36 months and all other counts concurrent. The Court notes that this defendant was on probation to the Court for attempted theft and aggravated theft * * *. Again the Court is making [Count 4] consecutive to the menacing by stalking [Count7] because all of the menacing counts merge with Count 7. The harm was threatened to throw a Molotov cocktail into the apartment building, nine suites, and the Court finds these are the worst forms of the offenses and one sentence would not be sufficient to maintain the seriousness of the offense. Also the defendant was on sanction from this Court when these offenses were committed. * * * I have sentenced you in order to protect the citizens within the guidelines of the law.

**{¶44}** On this record, we find that the trial court complied with the statutory requirements under R.C. 2929.14(C)(4) in sentencing Blackwell to consecutive sentences. We further find that the trial court did not abuse its discretion in so sentencing Blackwell. The two counts ordered to be served consecutively, Count 4, arson, and

Count 7, menacing by stalking, were relative to the burning of the car and the Molotov cocktail threat. These were serious crimes and ordering the convictions to be served consecutively aligned with the purposes of consecutive sentences specifically, and felony sentencing generally. To that end, the trial court "considered all required factors of the law" and found that the imposition of prison term in this case was "consistent with the purpose of R.C. 2929.11."[3]

{¶45} Finally, though, we remand this case for correction of the trial court's sentencing judgment entry. The sentencing transcript reflects that the trial court imposed an 18 month sentence on Count 4, to run consecutively to an 18 month sentence on Count 7, with all other counts running concurrently, for an aggregate three-year sentence. The parties agree that that was the court's sentence. The sentencing judgment entry, however, provides in part for "18 months on Count 7, consecutive to Counts 1, 2, and 4." We therefore remand for correction of the entry.

{¶46} In light of the above, Blackwell's convictions are affirmed. The case is remanded for a corrected sentencing entry reflecting a three-year sentence consisting of 18 months on Count 4, to run consecutively to 18 months on Count 7, with all other

---

[3]R.C. 2929.11 governs the overriding purposes of felony sentencing, which it states as protecting the public from future crime by the defendant and punishing the defendant. R.C. 2929.11(A). The statute further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

counts running concurrently.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., JUDGE

PATRICIA ANN BLACKMON, A.J., and
SEAN C. GALLAGHER, J., CONCUR