{¶ 1} Defendant-appellant Perry Reid ("Reid") appeals his convictions and sentences for multiple counts of rape, gross sexual imposition, and kidnapping. Finding some merit to the appeal, we affirm in part, reverse in part, and remand the case for resentencing and merger of allied offenses.
 {¶ 2} In January 2003, Reid was charged with numerous counts of rape, gross sexual imposition, and kidnapping. The following evidence was presented at his jury trial in May 2003:
 {¶ 3} S.P. ("the victim") testified that she was 13 years old and had been living with her stepfather Reid, and her mother, sister, and brother at their home in Broadview Heights for the last four years. She explained that her mother ("Robbie") began working evenings to earn money to go on a missionary trip with her church group. While Robbie was at work, the victim was at home with her siblings and Reid.
 {¶ 4} The victim further testified that Reid regularly engaged in sexual relations with her while her mother was at work. He would enter the bedroom where she was watching television in her night shirt and start massaging her back, legs, and thighs. He would then move her underwear aside and place his fingers inside her vagina. He would also move his own underwear aside and place his penis inside her vagina. She described the sexual encounters stating: "He would have the sex with me by putting his hands on my bottom and he would like move me around to have the sex."
 {¶ 5} The victim testified that these sexual incidents happened "two, three times a week" for several months. Although she did not specify which months this activity occurred, she stated that it started before her thirteenth birthday in September and continued until November 2002. She also testified that these incidents occurred while the other children were either downstairs watching television or were asleep.
 {¶ 6} Robbie testified that she had been married to Reid for seven years. She had two children from a prior relationship and one child with Reid. The entire family joined an Evangelical Church because she and Reid wanted to improve their lifestyles and raise the children in a religious home.
 {¶ 7} Robbie also testified, without objection, that Reid watched X-rated movies. She admitted that she watched several movies with him prior to joining the church. Robbie also testified, without objection, that she discovered a rope and a bandana hidden in the ceiling of the bathroom in their former apartment. She also found what appeared to be the victim's hair in the bandana. When she asked the victim if she knew what these things were, the victim, who was then nine years old, told her mother that Reid tied her up, wrapped the bandana around her face and used his fingers and tongue to touch her vaginal area. When Robbie confronted Reid about these allegations, he denied them. Robbie explained that she wanted to believe him because she had two children, was pregnant with a third child, and wanted a stable life for her family.
 {¶ 8} Robbie explained that she was scheduled to leave for her church missionary trip on November 19, 2002. During the two-week trip, the victim and the other children would remain at home with Reid. In early November, the victim told Robbie about the sexual incidents with Reid. Robbie confronted Reid with the accusations and he denied them. Although Robbie initially planned to call the police, after speaking with Reid, she agreed to discuss the matter with a minister.
 {¶ 9} After meeting with various members of the church, Joseph Koch, a pastoral intern at the church, reported the allegations of sexual abuse to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). Ian Lucash ("Lucash"), a social service worker from the CCDCFS, investigated the allegations and testified that he "felt" the victim's disclosure of sexual abuse was "credible." He also opined that the victim's emotional state was consistent with that of a sexually abused child. Although he was not a licensed social worker, he had completed numerous training seminars on various sex abuse issues including forensic interviewing techniques. He testified that he had six years experience with sex abuse cases and had investigated approximately 450 cases of alleged sexual abuse.
 {¶ 10} Robbie took the victim to Southwest General Hospital for an examination. A rape kit was completed, and the hospital personnel called the Broadview Heights Police Department, which received the rape kit and conducted its own investigation. Det. Brieyan K. Brandenburg, of the Broadview Heights Police Department, testified that scientific testing conducted on physical items removed from the victim's residence "came back negative."
 {¶ 11} Dr. Mark Feingold ("Dr. Feingold"), the Director of Child Protection Services in the Alpha Clinic of Metrohealth Medical Center, testified that he examined the victim for evidence of rape and sexual assault. The defense argued at trial that because the victim's hymen was intact, she was a virgin and, therefore, could not have been raped. However, Dr. Feingold explained that the hymen of a teenage girl is elastic and generally is not broken or rubbed away by sexual intercourse on a short-term basis. Dr. Feingold stated that, in his experience, he had seen pregnant teenagers with normal intact hymens. He explained that a woman's hymen does not disappear until after childbirth or years of sexual intercourse. Therefore, he concluded, the fact that the victim's hymen was intact did not rule out the possibility that she was raped on numerous occasions over a period of months. He also stated that there is no medical test for virginity.
 {¶ 12} Reid testified on his own behalf and denied ever raping or sexually assaulting the victim. He admitted that he massaged her legs when the victim broke her knee, but claimed he did so only in the presence of the other children and never touched her inappropriately.
 {¶ 13} The jury returned a guilty verdict on four counts of rape, four counts of gross sexual imposition, and four counts of kidnapping. Prior to sentencing, Reid filed a motion for new trial, which was denied. The court sentenced him to life in prison on counts one and two of the indictment, which alleged rape of a minor under the age of 13 years, and 10 years on counts eleven and twelve, which alleged rape of a minor over the age of 13. The court further sentenced him to eight years on each of the four kidnapping convictions and five years on counts 35, 36, 37, and 38, which charged gross sexual imposition of a minor under the age of 13, and eighteen months on counts 45, 46, 47, and 48, which charged gross sexual imposition of a minor over the age of 13. All sentences were ordered to be served consecutively.
 {¶ 14} Reid appeals, raising nine assignments of error.
 The Victim's Oath {¶ 15} In his first assignment of error, Reid argues the trial court erred by permitting the victim, the State's chief witness, to testify without being under oath. The record establishes that the victim was sworn in as a witness. However, apparently because she was only 13 years old, the court, sua sponte, questioned her about her understanding of the oath and her ability to tell the truth. During this colloquy, the following exchange took place:
"THE COURT: [S.P.], so you know what it means to receive anoath?
 THE WITNESS: Not really. I don't know what it means.
* * *
THE COURT: You know in the court, do you remember when youjust raised your hand and you said you were going to tell thetruth, we use that to sort of tell people that they have to tellthe truth. But this court is willing to accept any kind of bondyou want to give me for how you will swear to me that you willtell the truth. * * *
* * *
THE COURT: What do you do if you want to convince somebodythat your intentions are to tell the truth?
 THE WITNESS: I promise.
 THE COURT: You promise?
 THE WITNESS: Yes.
* * *
THE COURT: Well, what I want you to do right now is say to me,Judge Saffold — I'm Judge Saffold. That's funny? Can you just saythis, Judge Saffold —
 THE WITNESS: Judge Saffold.
 THE COURT: I promise to tell the truth.
 THE WITNESS: I promise to tell the truth.
 THE COURT: To the best of my ability.
 THE COURT: Will you do that?
 THE WITNESS: Yes.
 THE COURT: You promise me, right?
 THE WITNESS: Yes.
 THE COURT: I will accept that as your oath. You remember youtold me — I gave you the regular oath, and you know what, you canjust disregard it because that doesn't mean anything to you,right?
 THE WITNESS: Right.
 THE COURT: What you just said means something to you, right?
 THE WITNESS: Yes.
 THE COURT: You're going to tell me the truth?
 THE WITNESS: Yes.
 THE COURT: See these people over there, these ladies andgentlemen of the jury, I want you to take a look at them. Whatyou're doing is, by promising, you're also saying to them thatwhat you're going to say is going to be the truth to the best ofyour ability. OK?
 THE WITNESS: OK."
 {¶ 16} As a preliminary matter, we note that defense counsel failed to object to this dialogue. In general, an appellate court will not consider any error which the appellant could have called, but failed to call, to the trial court's attention at a time when the error could have been avoided or corrected by the trial court. See State v. Byrd (1987), 32 Ohio St.3d 79; Statev. Awan (1986), 22 Ohio St.3d 120; State v. Gordon (1971),28 Ohio St.2d 45.
 {¶ 17} However, Crim.R. 52(B) provides: "Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. Plain error exists when it can be said that, but for the error, the outcome of the trial would clearly have been otherwise. State v.Nicholas (1993), 66 Ohio St.3d 431, 436, 613 N.E.2d 225; Statev. Watson (1991), 61 Ohio St.3d 1, 6, 572 N.E.2d 97; State v.Moreland (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894.
 {¶ 18} The Ohio Supreme Court has frequently limited the application of the plain error rule. In State v. Landrum
(1990), 53 Ohio St.3d 107, 111, 559 N.E.2d 710, the court quoted and relied upon State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, as follows:
"Notice of plain error under Crim.R. 52(B) is to be taken withthe utmost caution, under exceptional circumstances and only toprevent a manifest miscarriage of justice."
 {¶ 19} Therefore, we invoke the plain error rule only if we find that the court denied Reid a fair trial, that the circumstances in the instant case are exceptional, and that reversal of the judgment is necessary to prevent a manifest miscarriage of justice.
 {¶ 20} Upon a thorough review of the record, we find that the trial court did not excuse the victim from the obligations of a formal oath. Rather, the court explained the oath obligation to the young witness and impressed upon her the importance of her obligation to tell the truth. Under these circumstances, we do not find any plain error which would justify reversal of the judgment.
 {¶ 21} Accordingly, the first assignment of error is overruled.
 Effective Assistance of Counsel {¶ 22} In his second assignment of error, Reid argues he was denied the effective assistance of counsel because his trial counsel committed fourteen critical errors during the course of the trial. Reid argues that, without these errors, the outcome of the trial would have been different. In his third assignment of error, Reid argues that each instance of his counsel's deficient performance constitutes plain error.
 {¶ 23} In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus; State v. Lytle (1976), 48 Ohio St.2d 391,358 N.E.2d 623, vacated on other grounds (1978), 438 U.S. 910,57 L.Ed.2d 1154, 98 S.Ct. 3135; and Strickland v. Washington (1984),466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052. Hence, to determine whether counsel was ineffective, Reid must show that (1) "counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's "deficient performance prejudiced the defense," in that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."Strickland v. Washington (1984), 466 U.S. 668, 687,80 L.Ed.2d 674, 104 S.Ct. 2052.
 {¶ 24} In Ohio, a properly licensed attorney is presumed competent. Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 301,209 N.E.2d 164. In evaluating whether a petitioner has been denied effective assistance of counsel, the Ohio Supreme Court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester (1976), 45 Ohio St.2d 71,341 N.E.2d 304, paragraph four of the syllabus. When making that determination, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle (1976),48 Ohio St.2d 391, 396, 358 N.E.2d 623, and State v. Calhoun (1999),86 Ohio St.3d 279, 289, 1999 Ohio 102, 714 N.E.2d 905. To show that a defendant has been prejudiced, the defendant must prove "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, at paragraph three of the syllabus, andStrickland, supra, at 686.
 {¶ 25} Reid argues his trial counsel was ineffective because they failed to argue the case of State v. Boggs (1992),63 Ohio St.3d 418, even though the victim had made "prior, false allegations of rape." Reid argues that Boggs holds that the defense may cross-examine a rape victim regarding prior accusations of rape if they are probative of truthfulness. However, Reid fails to demonstrate that his lawyers were deprived of an opportunity to cross-examine witnesses about the victim's alleged prior, false allegations of rape or that the victim ever actually made false accusations of rape.
 {¶ 26} At sidebar, defense counsel advised the court that they sought to introduce evidence of the victim's prior rape accusations "[b]ecause her mother has told that to the social workers." Then, during the cross-examination of the victim's mother, Robbie testified as follows:
"Q: But isn't it true that you told Miss Dickens at the AlphaClinic that when [S.P.] was even younger, that several of yourboyfriends had messed with her? Your phrase, `messed with her.'
 "A: She told me years later that she was messed with.
* * *
Q: And isn't it true that you told Miss Gula that [S.P.] has areputation for telling lies?
 A: That she has lied, yes.
 Q: Isn't it true that you told Miss Gula that [S.P.] has areputation for falsely accusing people of sexual improprieties?
 A: No."
 {¶ 27} Based on the foregoing, it is clear that defense counsel was not deprived of the opportunity to attempt to introduce evidence of the victim's alleged prior false allegations of rape. They sought such evidence during the cross-examination of the victim's mother, who admitted that the victim had previously lied, but denied that she ever falsely accused people of rape. Thus, defense counsel successfully elicited evidence challenging the victim's credibility and sought to introduce evidence of her alleged prior false allegations of rape. Simply because the victim's mother denied such false allegations does not justify a finding of ineffective assistance of counsel.
 {¶ 28} Reid also argues his trial counsel was ineffective because they failed to object to testimony that he watched pornographic videos. While such testimony might be prejudicial, defense counsel's decision not to object appears to have been a tactical one. Rather than objecting, the defense elicited an admission from Reid's wife that she watched pornographic videos with him and, thus, counsel attempted to discredit her. Therefore, the failure to object to evidence that Reid watched X-rated videos did not constitute ineffective assistance of counsel, especially when Reid has failed to show how this failure to object affected the outcome of the trial.
 {¶ 29} Similarly, defense counsel apparently decided not to object to evidence of Reid's alleged sexual assault of the victim four years earlier because they sought to use the evidence to discredit both the victim and her mother. As previously mentioned, the defense attempted to raise the issue that the victim made prior false allegations of rape. Although the victim and Robbie both testified that the victim had previously stated that Reid sexually assaulted her four years earlier, the fact that the prior sexual assault was never prosecuted could discredit both the allegations and the accusers. Therefore, it cannot be said that defense counsel's decision not to object to such evidence is indicative of ineffectiveness.
 {¶ 30} Reid argues that his trial counsel's failure to object to testimony that Reid said he would plead guilty is also indicative of ineffectiveness. However, the record reveals that when Robbie stated that Reid suggested to her that he might plead guilty, one of Reid's lawyers objected and the other asked to approach the bench to discuss the issue at sidebar. Moreover, when Robbie mentioned that Reid said he would plead guilty, she did not indicate that he was guilty but explained that Reid stated he might plead guilty "for the family not to have to go through this." Thus, the testimony would not have changed the outcome of the trial and, contrary to appellate's counsel's contention, Reid's trial counsel appropriately objected to the testimony.
 {¶ 31} Reid also argues that trial counsel's failure to object to two instances of hearsay testimony constituted ineffective assistance of counsel. First, Robbie testified that the victim never specifically told her how often Reid allegedly raped her but that she overheard the victim tell a Children's Services worker that it occurred four times per week. Second, the hospital nurse who examined the victim read into evidence the "assault history" she generated as part of the victim's medical records. She testified that the "assault history" was routinely taken as part of the rape kit, and not necessarily prepared for the purpose of medical treatment.
 {¶ 32} Although this evidence is objectionable as hearsay, Reid fails to show how such inadmissible hearsay changed the outcome of the trial. Several witnesses testified as to the frequency of Reid's alleged assaults on the victim with some inconsistencies. While Robbie reported she overheard the victim tell the Children's Services worker that Reid raped her four times per week, the victim testified that the incidents occurred two to three times per week. While Reid was indicted on seventeen counts of rape and sixteen counts of gross sexual imposition, the jury convicted him of only four counts of rape and four counts of gross sexual imposition. Thus, the jury obviously did not completely rely on the hearsay testimony in rendering the verdict. Since Reid cannot show how the hearsay testimony changed the outcome of the trial, we do not find counsel's failure to object to this testimony amounts to ineffective assistance of counsel.
 {¶ 33} Similarly, the "assault history" which the nurse read into evidence was also duplicative of other non-hearsay evidence presented by other witnesses. Reid fails to show how the "assault history" affected the outcome of the trial and, therefore, we do not find ineffective assistance of counsel.
 {¶ 34} Reid claims that his trial lawyer's failure to object to an investigator's testimony that he found the victim's disclosure of sexual abuse to be credible, indicates his counsel was ineffective. In State v. Boston (1989), 46 Ohio St.3d 108, the Ohio Supreme Court held that an expert may not comment on the veracity of a child declarant who had been raped because "in our system of justice, it is the fact finder, not the so-called expert or law witnesses, who bear the burden of assessing the credibility and veracity of witnesses." Id.,46 Ohio St.3d at 129. In State v. Kovac (2002), 150 Ohio App.3d 676,2002-Ohio-6784, the Second Appellate District applied the same rule to non-experts. Thus, the investigator's testimony that he found the victim's disclosure of the sexual abuse "credible" was objectionable, and Reid's defense counsel erred by failing to object for the record.
 {¶ 35} Nevertheless, the admission of statements in violation of Boston may be harmless if the declarant testifies and is subject to cross-examination, the State introduces substantial evidence in support of its position, and the declarant's testimony is cumulative to other evidence. See Kovac, supra, at 687, citing State v. Kincaid (Oct. 18, 1995), Lorain App. Nos. 94CA005942, and 94 CA005945; State v. Palmer, Medina App. No. CIV.A. 2323-M, 1995 Ohio App. LEXIS 514.
 {¶ 36} Here, the victim testified at trial and was subject to cross-examination. The substance of her testimony as well as the investigator's testimony was cumulative and the State introduced substantial evidence in support of its position. Therefore, counsel's failure to object to opinion testimony on the victim's credibility was harmless.
 {¶ 37} Reid further argues that his lawyers erroneously failed to object to the investigator's statement that "perpetrators generally don't admit" their sex crimes. He claims such testimony was inadmissible because it was "a comment on Appellant's silence and/or his failure to admit the truth of the allegations" in violation of the U.S. Constitution. However, when viewed in context, it is clear that the investigator was not commenting on Reid's silence per se, but was merely explaining that in his experience as an investigator of sex crimes, he finds allegations of sexual abuse difficult to substantiate because "[p]erpetrators generally don't admit and medical evidence is usually very difficult to find." We find no constitutional violation here and, furthermore, without evidence that such testimony changed the outcome of the trial, we do not find ineffective assistance of counsel.
 {¶ 38} Reid claims his lawyer erroneously failed to request a limiting instruction when Robbie testified that a member of her church notified Children's Services of the alleged sexual abuse because "he believed her." Reid argues that Robbie did not have personal knowledge of this third person's beliefs and, therefore, was not competent to testify to those beliefs under Evid.R. 602. Reid also argues his trial counsel failed to request an in camera inspection of witness statements pursuant to Crim.R. 16(B)(1)(g) before cross-examining important witnesses. However, Reid again fails to show how these alleged deficiencies in his trial counsel's performance affected the outcome of the trial.
 {¶ 39} Reid reasserts the issue of the court's dialogue with the 13-year-old victim about her understanding of her oath and claims that his counsel's failure to object to this colloquy indicates his counsel was ineffective. However, as previously demonstrated, the court did not excuse the witness from the obligations of her oath but simply emphasized the importance of telling the truth. Therefore, defense counsel had no reason to object.
 {¶ 40} Reid argues his trial lawyers were also deficient because they failed to move for acquittal pursuant to Crim.R. 29 and, therefore, waived any review of the sufficiency of the evidence. Failure to move for acquittal pursuant to Crim.R. 29 waives any sufficiency of evidence argument on appeal. State v.Colon (June 21, 2001), Cuyahoga App. No. 78287, citing State v.Roe (1989), 41 Ohio St.3d 18, 25, 535 N.E.2d 1351. Nevertheless, because the record is replete with evidence of Reid's guilt, failure to move for acquittal in this case was harmless.
 {¶ 41} When reviewing the sufficiency of the evidence, the court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. Statev. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132. Here, because there was no objective evidence of Reid's guilt, the outcome of the trial turned on the credibility of Reid and the victim. The victim testified that Reid raped her and touched her vagina with his fingers two to three times a week for a period of several months. Based on this testimony, there is no question that a motion for acquittal pursuant to Crim.R. 29 would be denied and that such denial would be affirmed on appeal. Therefore, defense counsel's failure to make this motion at trial is harmless.
 {¶ 42} Finally, Reid argues his trial counsel was ineffective because they failed to insist upon an opportunity to speak on his behalf at the sentencing hearing. He also argues that his defense counsel's failure to object to the sentence further prejudiced him. However, our review of the record reveals that his trial counsel did make a mitigating statement on his behalf. Also, defense counsel is not required to object to the court's sentence in order to preserve the issue for appeal. Therefore, we do not find any deficiency in counsel's conduct at sentencing.
 {¶ 43} Accordingly, the second and third assignments of error are overruled.
 Neutral and Detached Tribunal {¶ 44} In his fourth assignment of error, Reid argues he was denied his right to a fair trial because the court failed to remain neutral and detached. Reid claims the court demonstrated hostility towards defense counsel in the presence of the jury and that such hostility prejudiced his defense.
 {¶ 45} "The judiciary must not only remain detached and neutral in any proceeding before it, but the court must also epitomize itself as the paragon of impartiality." State v.Bayer (1995), 102 Ohio App.3d 172, 656 N.E.2d 1314,174. InState v. Ellis, Huron App. No. H-91-055, 1993 Ohio App. LEXIS 62, the court explained:
"A trial judge must conduct proceedings before a jury in ascrupulously impartial manner so as not to convey his opinion orbias on the merits of the case. State ex rel. Wise v. Chand(1970), 21 Ohio St.2d 113, 119. Remarks made by a trial judgewithin the hearing of the jury during trial may lend themselvesto be interpreted as the judge's opinion on the merits of thecase and carry substantial weight with the jury. State v. Boyd(1989), 63 Ohio App.3d 790, 794. Where such statements may beconstrued as a judicial pronouncement on the credibility of awitness or of a defendant or an opinion on the facts of the case,prejudicial error results. State v. Kay (1967),12 Ohio App.2d 38, 49."
 {¶ 46} Reid argues the court demonstrated a bias in favor of the State by admonishing defense counsel in the jury's presence during opening statement. However, during opening statements, defense counsel repeatedly made arguments which were not appropriate for opening statement. The State objected to the argumentative statements and the court warned defense counsel that arguments were not appropriate during opening statement and that, if he continued to argue in opening statement, the court would cut his opening statement short. When defense counsel continued to make arguments despite the court's warning, the court instructed defense counsel to sit down before finishing his opening statement.
 {¶ 47} Although the court's admonition and subsequent order to sit down occurred in the presence of the jury, the court's actions were not the product of bias but the result of defense counsel's noncompliance with the court's order. The jury heard the warnings before the court cut the opening statement short. Therefore, rather than concluding that the court was biased against the defense, the jury would conclude that defense counsel had acted inappropriately.
 {¶ 48} Similarly, Reid claims the court improperly interrupted defense counsel during cross-examination of Robbie. However, again, the admonitions were warranted by defense counsel's improper conduct. For example, during the cross-examination of Robbie, the following exchange took place:
"Q: Don't you think that your concern for the safety of yourchild should have outweighed your concern about the nosiness ofyour neighbors?
 A: That wasn't the only reason behind it.
 Q: That was the chief reason you told the prosecutor.
 THE COURT: Is that a question or are you testifying?
 MS. VENEZIANO: That was something I'm going to withdraw."
 {¶ 49} By withdrawing her statement, defense counsel admitted she acted improperly. She withdrew the statement in the jury's presence leaving the jury to conclude that defense counsel made an inappropriate remark.
 {¶ 50} As the cross-examination of Robbie continued, the court again asked defense counsel if she was testifying and warned her not to make statements during cross-examination:
"Q: Now, when Mr. Kosko asked you about your husband'shobbies, you told him that he played Play Station and sometimeshe watched X-rated movies but so did you, right? You watchedX-rated movies with your husband, correct?
 A: Just a couple of times. And that's what I told him.
 Q: Actually you told Mr. Kosko five times, not a couple oftimes.
 A: Couple, five, yes.
 Q: Do you remember a couple is two, five is five. A couple andfive are not the same?
 THE COURT: Are you testifying? I want you to ask her aquestion and I want you to stop testifying."
 {¶ 51} Although the court admonished defense counsel in the jury's presence, the warnings were justified and brought about by defense counsel's own conduct. There is no evidence that the court was biased against defense counsel based on these admonitions. Moreover, the jury could see the admonitions resulted from defense counsel's actions in contravention of the court's instructions. Therefore, it cannot be said that the jury was influenced by any bias of the court.
 {¶ 52} Reid also argues that the court's bias was demonstrated by the court's questioning of the victim about her understanding of her oath obligation. Reid claims this dialogue gave the jury the impression that the judge established a special relationship with the victim, thereby endowing the victim with an enhanced level of credibility. Reid further claims that the court treated the victim as it did no other witness.
 {¶ 53} However, the victim was only thirteen years old, and the youngest witness to testify. The jury knew her age and that she had a learning disability. Under these circumstances, the jury could understand why the court might question this witness about her understanding of her oath obligation. Therefore, we cannot say that this dialogue prejudiced the jury.
 {¶ 54} Reid argues the court demonstrated bias by not permitting defense counsel to impeach the victim with a prior inconsistent statement relating to the frequency of the rapes. However, while evidence of the victim's prior inconsistent statements may have been admissible, the court's refusal to admit such evidence was not obvious to the jury because the evidence was excluded when the court sustained the State's objection. The jury would not know the reason for the State's objection or the court's sustaining the objection and, therefore, would not draw any conclusions as to bias.
 {¶ 55} Finally, Reid argues the court demonstrated bias against the defense by refusing to allow them to speak on Reid's behalf at the sentencing hearing. However, as previously stated, the court not only gave defense counsel an opportunity to make mitigating statements on behalf of their client, the court heard those statements without interruption. Moreover, the jury was discharged long before the sentencing hearing and, therefore, could make no conclusions based on those proceedings. Therefore, we do not find that Reid was deprived of a fair trial based on any bias of the court.
 {¶ 56} Accordingly, the fourth assignment of error is overruled.
 Consecutive Sentences {¶ 57} In his fifth and sixth assignments of error, Reid argues the trial court erred in sentencing him to consecutive prison terms without setting forth the mandatory findings required by R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2)(c).
 {¶ 58} Pursuant to R.C. 2929.14(E)(4), the court may impose consecutive sentences for convictions of multiple offenses only after it makes three determinations: (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) if the court also finds any of the following:
"(a) The offender committed the multiple offenses while theoffender was awaiting trial or sentencing, was under a sanctionimposed pursuant to section 2929.16, 2929.17, or 2929.18 of theRevised Code, or was under post-release control for a prioroffense.
 (b) The harm caused by the multiple offenses was so great orunusual that no single prison term for any of the offensescommitted as part of a single course of conduct adequatelyreflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstratesthat consecutive sentences are necessary to protect the publicfrom future crime by the offender."
 {¶ 59} R.C. 2929.14(E)(4). See, also, State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473.
 {¶ 60} When a trial court imposes consecutive sentences under R.C. 2929.14, it must also comply with R.C. 2929.19(B)(2)(c), which requires that the court "make a finding that gives its reasons for selecting the sentences imposed." The requirement that a court give its reasons for selecting consecutive sentences is separate and distinct from the duty to make the findings required by R.C. 2929.14(E)(4). Comer, supra. See, also, Statev. Hudak, Cuyahoga App. No. 82108, 2003-Ohio-3805, citing,State v. Brice, Lawrence App. No. 99 CA21, 2000 Ohio App. LEXIS 1386. Moreover, "a trial court must clearly align each rationale with the specific finding to support its decision to impose consecutive sentences." Comer, supra. These findings and reasons need not "directly correlate each finding to each reason or state a separate reason for each finding" but must be articulated by the trial court so an appellate court can conduct a meaningful review of the sentencing decision. State v.Cottrell, Cuyahoga App. No. 81356, 2003-Ohio-5806; Comer,
supra, citing, Griffin Katz, Sentencing Consistency: Basic Principles Instead of Numerical Grids: The Ohio Plan (2002), 53 Case W.Res.L.Rev. 1, 12.
 {¶ 61} In sentencing Reid to consecutive sentences, the trial court stated:
"The court finds that you show absolutely no remorse for thisoffense. The court finds [sic] to be more serious that the injuryto the victim was worsened by the physical or mental condition orage of the victim. That the victim suffered serious physical andpsychological harm as a result of the offense.
 And when the court considers those two options, the court doesconsider that you were in the home as her stepfather, that she isa young person, a young victim and apparently loves you and hascontinued to love you throughout these proceedings, which madeher more vulnerable to your predatory nature."
 {¶ 62} The court then proceeded to impose the sentences for each of Reid's convictions. The court stated:
"* * * The court makes the following findings with referenceto the sentences. This court finds that a consecutive sentence isnecessary to protect the public from future crime and to punishthe offender and that consecutive sentences are notdisproportionate to the seriousness of the offender's conduct andto the dangers the offender poses to the public.
 And the court also finds that the harm caused by the multipleoffenses was so great or unusual that no single prison term forany of the offenses committed as part of a single course ofconduct adequately reflects the seriousness of the offender'sconduct.
 Therefore, all of these sentences will be servedconsecutively."
 {¶ 63} As indicated by the above-quoted excerpts, the trial court addressed the factors enumerated in R.C. 2929.14(E)(4), but did not provide its reasoning. It is unclear why the trial court found that a consecutive sentence was necessary to protect the public from future crime or to punish Reid. The trial court also failed to state its reasoning as to the proportionality of the sentence to the seriousness of Reid's conduct and to the danger he posed to the public. Therefore, we vacate the consecutive sentence imposed by the trial court and remand this matter for resentencing in accordance with R.C. 2929.14(E)(4), R.C.2929.19(B)(2), and Comer.
 {¶ 64} Accordingly, the fifth and sixth assignments of error are sustained.
 Sufficiency and Manifest Weight of the Evidence {¶ 65} In his eighth assignment of error, Reid argues the verdicts on counts one and two of the indictment were not supported by sufficient evidence and were against the manifest weight of the evidence.
 {¶ 66} An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact. Id.
 {¶ 67} In essence, sufficiency is a test of adequacy. Statev. Thompkins, 78 Ohio St.3d 380, 386-387, 1997-Ohio-52,678 N.E.2d 541. A criminal conviction is not supported by sufficient evidence when the prosecution has failed to "prove beyond a reasonable doubt every fact necessary to constitute any crime for which it prosecutes a defendant." State v. Robinson (1976),47 Ohio St.2d 103, 108, 351 N.E.2d 88, citing In re Winship
(1970), 397 U.S. 358, 25 L.Ed.2d 368, 90 S.Ct. 1068. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass
(1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212.
 {¶ 68} The test to be applied when reviewing a claim that a conviction is against the manifest weight of the evidence was stated by the court in State v. Martin (1983),20 Ohio App.3d 172 at 175, 20 Ohio B. 215, 485 N.E.2d 717, as follows:
"There being sufficient evidence to support the conviction asa matter of law, we next consider the claim that the judgment wasagainst the manifest weight of the evidence. Here the test ismuch broader. The court, reviewing the entire record, weighs theevidence and all reasonable inferences, considers the credibilityof witnesses and determines whether in resolving conflicts in theevidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered. * * * See Tibbs v. Florida(1982), 457 U.S. 31, 38, 42, 72 L.Ed.2d 652, 102 S.Ct. 2211."
 {¶ 69} See, also, Thompkins, supra, at 387.
 {¶ 70} However, this court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a reasonable doubt. DeHass, supra at syllabus;State v. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132. The ultimate goal of the reviewing court is to determine whether the new trial is mandated. We should grant a new trial only in the "exceptional case in which the evidence weighs heavily against conviction." State v. Lindsey, 87 Ohio St.3d 479, 483,2000-Ohio-465, 721 N.E.2d 995, 1002.
 {¶ 71} In the instant case, Reid contends the evidence did not support the jury's finding that Reid raped the victim while she was under 13 years of age as charged in counts one and two of the indictment. However, the victim testified that Reid raped her both before and after her thirteenth birthday. Specifically, the victim testified:
"Q: How often did it happen that you had sex with Perry?
 A: Somewhere along last year. And it was like two, three timesa week, something like that.
 Q: Two or three times for how long?
 A: Couple months.
 Q: Do you remember what months they were?
 A: I'm not specific. November. I don't know. Not November. I'mnot specific about months.
 Q: You're not?
 A: No.
 Q: Do you remember how old you were?
 A: Twelve to thirteen.
 Q: So it happened before your birthday and after?
 A: I think so, yes."
On cross-examination, the victim further explained:
"A: I don't know the month. When — well, my mom was workingand I don't remember what time, but maybe a month or somethinglike that later after the — she just began working there.
 Q: So when did she begin there, do you know?
 A: No, Not really. I think it was June and April I think.
 Q: April?
 A: Yeah, I think so.
 Q: So you're claiming that he started having sex with youroughly a month later. I think you said it was about three timesa week?
 A: Yes.
 Q: And this continued all the way through until November?
 A: Yeah."
 {¶ 72} Thus, according to the victim's testimony, Reid first raped her about one month after her mother started working in April, months before her thirteenth birthday. Thus, based on her testimony, Reid raped her several months before she turned thirteen and for a couple months thereafter. Based on this evidence, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. We also conclude that the State presented sufficient evidence to support each of Reid's rape convictions beyond a reasonable doubt.
 {¶ 73} Accordingly, the eighth assignment of error is overruled.
 Allied Offenses {¶ 74} In his ninth assignment of error, Reid argues the trial court erred in failing to merge the kidnapping, gross sexual imposition, and rape counts as allied offenses of similar import.
 {¶ 75} Gross sexual imposition and rape may, depending on the circumstances, be allied offenses of similar import. For instance, it is well established that gross sexual imposition is a lesser included offense of rape. State v. Johnson (1988),36 Ohio St.3d 224, 226, 522 N.E.2d 1082; State v. Jones (1996),114 Ohio App.3d 306, 325, 683 N.E.2d 87. Accordingly, under R.C.2941.25, a defendant may generally not be convicted of and sentenced for both gross sexual imposition and rape when they arise out of the same conduct. Id.
 {¶ 76} In determining whether rape and kidnapping are allied offenses of similar import, the "primary issue * * * is whether the restraint or movement of the victim [which forms the basis of the kidnapping charge] is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense." State v. Logan (1979),60 Ohio St.2d 126, 135, 397 N.E.2d 1345. In Logan, supra, the Supreme Court held that, where a victim was forced from an alley down a flight of stairs before being raped, the kidnapping and rape were allied offenses of similar import.
 {¶ 77} In the instant case, the State concedes that the rape and kidnapping convictions should merge as allied offenses of similar import but argues that because the gross sexual imposition offenses preceded each of the rapes, they should not merge. We agree.
 {¶ 78} The victim testified that Reid massaged her thighs and vaginal area before moving her underwear aside to allow the act of penetration. According to this testimony, the sexual contact necessary for the gross sexual imposition conviction was completed before the sexual conduct necessary for the rape convictions started. The sexual contact element of the gross sexual imposition offenses was not incidental to the sexual conduct element of the rapes because the rapes could have been committed without the preceding sexual contact. Therefore, we conclude that the trial court should have merged the convictions for kidnapping and rape, but not for the gross sexual imposition.
 {¶ 79} Accordingly, Reid's ninth assignment of error is sustained to the extent that the trial court is ordered to merge the kidnapping and rape convictions.
 {¶ 80} In light of our remand for resentencing, the seventh assignment of error challenging the imposition of maximum sentences, is moot.
 {¶ 81} Judgment is affirmed in part and reversed in part. Case is remanded for a new sentencing hearing and merger of the allied offenses.
Judgment affirmed in part and reversed in part.
Anne L. Kilbane, P.J., Concurs.
 Sean C. Gallagher, J., concurs in part and dissents in part.(see separate opinion.)