JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Marta DeMurillo ("DeMurillo"),[1] appeals her convictions for assault on a peace officer. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2004, DeMurillo was charged with two counts of assault on a peace officer. The matter proceeded to a bench trial, where the following evidence was presented.
 {¶ 3} In September 2004, Officer Jeffrey Ryan responded to a complaint of loud music coming from a home on East 71st Street. When he arrived at the house, he observed a large party and was approached by DeMurillo's son, Roberto, who argued with him about the police authority to be on the property without a warrant. After speaking with the property owner regarding the loud music, Officer Ryan requested the assistance of additional officers because of Roberto's continued argumentative nature. When Officer Joseph Rini arrived, the officers attempted to break up the party. Again, Roberto confronted Officer Ryan, questioning his authority. Officer Ryan threatened to tow cars and arrest people if the crowd did not disperse.
 {¶ 4} The officers returned to the front yard and began issuing citations for illegally parked vehicles. Roberto and approximately thirty guests approached the officers and began harassing and threatening them. The officers attempted to arrest Roberto, but Roberto struggled with them. According to the officers, the guests began throwing objects and confronting the officers. The officers used pepper spray to subdue the crowd.
 {¶ 5} As the officers attempted to handcuff Roberto, DeMurillo ran out of the house screaming at the officers. She attempted to grab Roberto and pull him away from the police. During this struggle, DeMurillo struck Officers Ryan and Rini in the head and face. DeMurillo was then pepper-sprayed and arrested.
 {¶ 6} The court found DeMurillo guilty of both charges of assault and sentenced her to one year of community control sanctions. DeMurillo appeals her convictions, raising two assignments of error.
 Sufficiency of the Evidence {¶ 7} In her first assignment of error, DeMurillo argues that insufficient evidence exists to support her assault convictions.
 {¶ 8} We first note that DeMurillo failed to move for an acquittal pursuant to Crim.R. 29. A defendant must move for acquittal pursuant to Crim.R. 29 at the close of the State's case and also at the close of the defendant's case in order to preserve the right to appeal any sufficiency of the evidence argument. State v. Adams, Lake App. No. 2003-L-110,2005-Ohio-1107. See, also, State v. Turner (1993),91 Ohio App.3d 153, 157, 631 N.E.2d 1117. Failure to move for a judgment of acquittal waives all but plain error involving the sufficiency of the evidence. State v. Ellsworth, Cuyahoga App. No. 83040,2004-Ohio-4092; State v. Reid, Cuyahoga App. No. 83206,2004-Ohio-2018.
 {¶ 9} Crim.R. 52(B) provides that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The standard for noticing plain error is set forth in State v. Barnes,94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240:
By its very terms, the rule places three limitations on areviewing court's decision to correct an error despite theabsence of a timely objection at trial. First, there must be anerror, i.e., a deviation from a legal rule. * * * Second, theerror must be plain. To be `plain' within the meaning of Crim.R.52(B), an error must be an `obvious' defect in the trialproceedings. * * * Third, the error must have affected`substantial rights.' We have interpreted this aspect of the ruleto mean that the trial court's error must have affected theoutcome of the trial.
(Citations omitted.)
 {¶ 10} Errors that satisfy these three limitations may be corrected by the appellate court. However, notice of plain error should be done "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, 97,372 N.E.2d 804.
 {¶ 11} The standard of review with regard to the sufficiency of evidence is set forth in State v. Bridgeman (1978),55 Ohio St.2d 261, 381 N.E.2d 184, syllabus:
Pursuant to Criminal Rule 29(A), a court shall not order anentry of judgment of acquittal if the evidence is such thatreasonable minds can reach different conclusions as to whethereach material element of a crime has been proved beyond areasonable doubt.
 {¶ 12} See, also, State v. Apanovitch (1987),33 Ohio St.3d 19, 23, 514 N.E.2d 394; State v. Davis (1988),49 Ohio App.3d 109, 113, 550 N.E.2d 966. Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks
(1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, in which the Ohio Supreme Court held:
An appellate court's function when reviewing the sufficiencyof the evidence to support a criminal conviction is to examinethe evidence submitted at trial to determine whether suchevidence, if believed, would convince the average mind of thedefendant's guilt beyond a reasonable doubt. The relevant inquiryis whether, after viewing the evidence in a light most favorableto the prosecution, any rational trier of fact could have foundthe essential elements of the crime proven beyond a reasonabledoubt.
(Citations omitted.)
DeMurillo was charged with two counts of assault on a peace officer. Pursuant to R.C. 2903.13(A), no person shall knowingly cause or attempt to cause physical harm to another. DeMurillo contends that there was insufficient evidence presented at trial to prove that she "knowingly" assaulted Officers Ryan and Rini.
 {¶ 13} A person acts knowingly, regardless of purpose, when she is aware that her conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when she is aware that such circumstances probably exist. R.C. 2901.22(B); State v. Miller,96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498. "`Probably' is defined as `more likely than not' or a greater than fifty percent chance." Miller v. Paulson (1994), 97 Ohio App.3d 217, 222,646 N.E.2d 521.
 {¶ 14} In the instant case, Officer Ryan testified that as he attempted to handcuff Roberto, DeMurillo "came running up, screaming, hollering, and she punched Officer Rini twice in the face. She punched me twice in the face." After he pepper-sprayed her, she attempted to run back into the crowd. Officer Ryan testified that, after they restrained her, she continued to struggle with the officers until she was handcuffed. Ryan claimed that she came running at them swinging her fists.
 {¶ 15} Officer Rini testified that DeMurillo "came at us and she was just wailing and swinging in a wild manner, striking myself, striking Officer Ryan. She was just pulling. She didn't want [Roberto] to go to jail, it was quite obvious. She was just basically out of control, doing anything that she could to stop that." According to Rini, DeMurillo was swinging her arms toward them and struck him twice in the face.
 {¶ 16} DeMurillo testified that, when she heard that the police were allegedly beating her son, she ran outside. She testified that she tried to pull Roberto away from the officers. She vehemently denied striking the officers. She testified that, when she approached the officers, they pepper-sprayed her.
 {¶ 17} Maria DelRosario, Roberto's wife, testified that DeMurillo did not strike the officers. Samuel Medina, DeMurillo's brother-in-law, testified that DeMurillo was "trying to detain" the police so that Roberto would not be struck. Jose Guadalupe Murillo, DeMurillo's son, testified that he saw his mother running to grab Roberto.
 {¶ 18} Although conflicting testimony was presented, the record clearly shows that DeMurillo ran toward the officers because her son was being arrested. She admitted that she was trying to pull Roberto away from the situation when the officers pepper-sprayed her. Both officers testified that DeMurillo ran toward them while screaming and swinging her arms at them, trying to prevent Roberto from being arrested. Although DeMurillo may not have acted purposely, she acted knowingly when she approached the officers in a confrontational manner, trying to protect her son. DeMurillo knowingly interfered with the officers while they were attempting to perform their duties. The trial court, as the trier of fact, could certainly find that she was aware that her conduct would probably cause a certain result, i.e. that she would strike the officers as she tried to pull her son away from them.
 {¶ 19} Therefore, we find no plain error which would justify reversal of DeMurillo's convictions based on sufficiency of the evidence.
 {¶ 20} Accordingly, the first assignment of error is overruled.
 Manifest Weight of the Evidence {¶ 21} In her second assignment of error, DeMurillo argues that her assault convictions are against the manifest weight of the evidence.
 {¶ 22} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. As the Ohio Supreme Court declared:
Weight of the evidence concerns `the inclination of thegreater amount of credible evidence offered in a trial, tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on itseffect in inducing belief.' * * *
 The court, reviewing the entire record, weighs the evidenceand all reasonable inferences, considers the credibility ofwitnesses and determines whether in resolving conflicts in theevidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered. The discretionary power togrant a new trial should be exercised only in the exceptionalcase in which the evidence weighs heavily against the conviction.
Id. at 387.
 {¶ 23} A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132. Additionally, circumstantial evidence and direct evidence inherently possess the same probative value and, therefore, should be subjected to the same standard. Jenks, supra.
 {¶ 24} Although we acknowledge there is conflicting testimony as to what occurred that evening, it is uncontroverted that DeMurillo approached the officers in an agitated state and tried to pull her son away from the arresting officers. The evidence supports the court's conclusion that DeMurillo knew that physical harm to the officers was probable. Based on the foregoing, we cannot say that the trial court lost its way in finding DeMurillo guilty of assault. The trial court could have reasonably concluded that substantial evidence was presented to prove that DeMurillo assaulted the officers. Therefore, her convictions are not against the manifest weight of the evidence.
 {¶ 25} Accordingly, her final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J. and Celebrezze, Jr., J. Concur.
[1] At trial, DeMurillo testified that she is also known as "Martha Murillo."